# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | | |
|---|---|---|
| SKYLER JACKSON, Individually and on behalf of all others similarly situated, | ) ) ) | **CLASS ACTION COMPLAINT** |
| Plaintiffs, | ) ) | |
| v. | ) | Case No.: 4:22-cv-55 |
| PROTEXTING, LLC | ) ) ) | |
| & | ) ) | |
| PROFESSIONAL GHOSTWRITER | ) ) | |
| & | ) ) | |
| JOHN DOE CORPORATIONS 1 THROUGH 10, and OTHER JOHN DOE ENTITIES 1 THROUGH 10, all whose true names are Unknown. | ) ) ) ) ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) ) ) | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW Plaintiff Skyler Jackson, individually and on behalf of all others similarly situated, and through undersigned counsel, and for his Complaint against Protexting, LLC. ("PRO"), Defendant Professional Ghostwriter ("PGW") and John Doe Corporations 1 Through 10, and Other John Doe Entities 1 Through 10, all whose true names are unknown ("John Does", and together with Pro and PGW, "Defendants") and for their violations under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"), and Mo. Rev. Stat 407.010, Missouri Merchandising Practices Act ("MMPA"), states to the Court as follows:

## INTRODUCTION

1.      The TCPA was enacted in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. Mims v. Arrow Fin. Servs., LLC, 132 S.

Case 4:22-cv-00055-HFS   Document 1   Filed 01/26/22   Page 1 of 21

Ct. 740, 745 (2012).

2.     Defendants attempt to telemarket their products and services to consumers across the country.

3.     Defendant PGW and John Does commission or otherwise encourage Defendant PRO, and upon information and belief, numerous other corporations and vendors, to make auto-dialed calls to individuals across the country.

4.     Unfortunately, Defendants do not obtain prior express written consent to place these autodialed telemarketing calls and text messages and, therefore, are in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

5.     These autodialed calls and text messages placed by Defendants caused Plaintiff and class members to suffer actual harm and legal injury. Plaintiff has suffered aggravation, invasion of privacy, and nuisance due to receiving such calls and text messages. Plaintiff and class members suffered from the diminished use, enjoyment, utility, and value of their telephones as these calls and messages interfered with their access to their cell and residential phones.

6.     The TCPA was enacted to protect consumers from unauthorized and unwanted autodialed calls and text messages exactly like the ones alleged in this case. See Mims v. Arrow Fin Servs., LLC, 132 S.Ct., 740, 745 (2012). Defendants placed these autodialed calls despite the fact that Plaintiff never provided Defendants with prior express written consent to receive them.

7.     Senator Hollings, the TCPA's sponsor described these autodialed calls as "the scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall." 137 Cong. Rec. 30, 821 (1991).

8.     By placing the autodialed calls at issue to individuals on both the FTC do-not-call registry and who should be on an internal do-not-call list, Defendants have violated the privacy and

2

statutory rights of Plaintiff and caused him to suffer actual harm by subjecting him to the aggravation that necessarily accompanies the receipt of such repeated and unauthorized autodialed calls and messages.

9.     Plaintiff therefore seeks an injunction requiring Defendants to stop using an autodialer to place telemarketing calls and messages to telephones, to stop allowing phone calls and text messages to numbers on the FTC's do-not-call registry, and to maintain and abide by an internal do-not-call registry, as well as an award of actual and statutory damages, together with costs and reasonable attorneys' fees.

**PARTIES**

10.     Plaintiff Skyler Jackson ("Plaintiff") is a resident of the State of Missouri.

11.     Defendant PRO is a limited liability company organized in the state of Texas with its mailing address at 11226 La Cantera Trail, Frisco, Texas 75033. that conducts business throughout this state and throughout the country.

12.     Defendant PGW is a company organized in the state of Texas with its mailing address at 1910 Pacific Avenue, Suite 8025-1, Dallas, Texas 75201 that conducts business in this state and throughout the country.

13.     Defendant PGW purports itself out to be a legitimate business, but upon information and belief, is not registered with any secretary of state's website.

14.     Upon information and belief, Defendants John Doe Corporations 1 through 10 (the "Corporate Defendants") are corporations, the names and addresses of residence of which are unknown.

15.     Upon information and belief, Defendants Other Entity Defendants 1 through 10 (the "Other Entity Defendants") are other legal entities, the names of addresses of residences of which are unknown.

16.     This Court has personal jurisdiction over Defendants because Defendants transact business within this state, have made contracts within this state, and/or have committed tortious acts within this state and otherwise have sufficient minimum contacts with the State of Missouri.

17.     Venue is proper because a substantial part of the events, actions, and omissions of Defendants, which give rise to the claims and subject Defendants to liability for this telemarking campaign, occurred in this circuit.

18.     Plaintiff is an individual located in Blue Springs, Missouri.

19.     Plaintiff resides in this venue and received the at-issue calls while in this venue.

20.     Plaintiff's area code, (660), is associated with the western half of Missouri. Thus, any party texting or calling Plaintiff should reasonably expect Plaintiff to reside in this district.

21.     Plaintiff resides in this venue and received the at-issue calls while in this venue.

22.     This Court has personal jurisdiction over Defendants because they conduct business in this Circuit and the events giving rise to this lawsuit occurred in and emanated from, in substantial part, this Circuit. Thus, they have purposefully availed themselves of this jurisdiction.

**TCPA BACKGROUND**

23.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing…can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

24.     Through the TCPA, Congress outlawed telemarketing via unsolicited automated or pre-recorded telephone calls ("robocalls"), finding:

Residential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy.

4

- - -

Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call…is the only effective means of protecting telephone consumers from this nuisance and privacy invasion. *Id.* § 2(10) and (12); *see also Mims*, 132 S. Ct. at 745.

*The TCPA imposes vicarious liability on*

*third-parties who do not physically dial the calls*

25.     Under the TCPA, a seller of a product or service may be vicariously liable for a third-party marketer's violations of Sections 227(b) and 227(c), even if the seller did not physically dial the illegal call, and even if the seller did not directly control the marketer who did. *In re Joint Pet. Filed by Dish Network, LLC*, FCC 13-54 ¶ 37, 2013 WL 193449 (May 9, 2013) ("FCC Ruling").

26.     A seller is liable under Sections 227(b) and (c) when it has authorized a telemarketer to market its goods or services. *Id.* ¶ 47.

27.     Additionally, a seller may be vicariously liable for violations of those provisions under principles of apparent authority and ratification. Factors relevant to a finding of vicarious liability include:

a.     Whether "the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including…access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information,"

b.     Whether the outside sales entity can "enter consumer information into the seller's sales or customer systems,"

c.     Whether the outside sales entity has "the authority to use the seller's trade name, trademark and service mark,"

5

d.     Whether the "seller approved, wrote or reviewed the outside entity's telemarketing scripts," and

e.     "Whether the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct." *Id.* ¶ 46.

## FACTUAL ALLEGATIONS

28.     Plaintiff is a "person" as defined by 47 U.S.C. § 153(39).

29.     Plaintiff and Defendant PGW discussed the potential of entering into a business relationship.

30.     Plaintiff advised Defendant PGW that he no longer was interested in their services.

31.     Plaintiff did not sign a contract with Defendant PGW.

32.     Plaintiff did not give Defendant PGW consent to telemarket to his telephone.

33.     Plaintiff did not give Defendant PGW consent to provide any other individuals with his number.

34.     Plaintiff made clear that any purported business relationship was terminated and that no further communication was to occur between Plaintiff and Defendant PGW.

35.     On or about December 2020, Plaintiff began receiving text messages from telemarketing representatives of PRO and John Does, purportedly calling on behalf of PGW and other John Does, also owned and controlled by PGW.

36.     Upon information and belief, Defendant PGW conducts business under similar names, offering the exact same product, with the exact same business and marketing structure.

37.     While these John Doe entities have different names presented to the public, they are in fact one in the same with PGW and are owned and operated by the same individuals.

6

38.     Defendants texted Plaintiff in an attempt to sell or otherwise coerce Plaintiff into engaging with Defendant PGW and other John Doe entities offering the exact same service.

39.     Plaintiff is the regular user and only individual assigned to the phone number (660) 251-8099 and was the recipient of Defendants' phone calls to that number.

40.     Plaintiff does not use this telephone line for any business purposes.

41.     Plaintiff's caller ID identified the text messages from Defendants as being initiated from numerous phone numbers that appear to have been "spoofed," or numbers that appear to be legitimate phone numbers but are actually autodialed telemarketing messages and calls from Defendants.

42.     Defendants are not entitled to send soliciting text messages to these registered number without prior express consent, which they did not have.

43.     After Plaintiff made clear that any business relationship was permanently terminated, Defendants were no longer allowed to contact Plaintiff or solicit others to contact Plaintiff on their behalf.

44.     Plaintiff has received at least thirty-eight (38) messages from Defendants in which Plaintiff did not consent to receiving.

45.     Upon information and belief, Plaintiff has received well in excess of thirty-eight (38) text messages, as to be determined in the discovery phase.

46.     These text messages came after Plaintiff informed Defendant PGW that any perceived consent to communicate with him was revoked.

47.     Defendants refused to stop this harassment.

48.     Defendants knew that Plaintiff did not wish to be texted but continued to do.

49.     Plaintiff has had to constantly endure these text messages throughout his workday as they invaded upon his privacy and solitude.

7

50. Defendants knew that they continued to text message to attempt to telemarket services from an individual who attempted to prevent his phone number from receiving such harassing calls and messages.

51. Upon information and belief, some or all of the calls the Defendants made to the Plaintiff's telephone number were made using an "automatic telephone dialing system" which has the capacity to store and produce telephone numbers to be called, using a random or sequential number generator or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C. § 227(a)(1).

52. Upon information and belief, Defendants' "systems" include an auto-dialer system and an internal Do Not Call List.

53. Upon information and belief, Defendants continued to call individuals placed on the internal Do Not Call List despite consumer's requests to be placed on such a list.

54. Each subsequent call Defendants made to Plaintiff's telephone was knowing and willful and done so without the express consent of Plaintiff.

55. Defendants intentionally harassed and abused Plaintiff on numerous occasions by calling up to eight times in one day and calling multiple days in a row with such frequency as can reasonably be expected to harass.

56. Upon information and belief, Defendant PGW and its related John Doe entities have engaged in a business strategy that includes marketing through illegal telemarketing calls.

57. Upon information and belief, Defendant PRO and other John Doe Corporations have a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice to solicit individuals just as they did to Plaintiff's line in this case.

58. Upon information and belief, Defendant PRO and its related John Doe Entities' corporate policies are structured so as to continue to message individuals like Plaintiff, on behalf of

other companies that seek to harass consumers, despite these individuals explaining to all Defendants that they want the calls to cease.

59.     Not a single call placed by Defendants to Plaintiff was placed for "emergency purposes" as specified in 47 U.S.C. § 277(b)(1)(A).

60.     Defendants willfully and knowingly violated the TCPA with respect to Plaintiff.

61.     Each text message sent by Defendants to the Plaintiff's phone without consent caused Plaintiff to suffer the injury of invasion of privacy and the intrusion upon his right of seclusion.

62.     Each text message sent by Defendants to the Plaintiff's phone without consent caused Plaintiff to suffer the injury of unnecessary expenditures to his time. For the messages Plaintiff opened, the time spent doing so was unnecessary as Plaintiff repeatedly asked for the messages to stop. Even for unanswered messages, Plaintiff had to waste time silencing his ring tone or deleting the message. This also impaired the usefulness of Plaintiff's phone, which is designed to inform the user of important and legitimate missed communications.

63.     Each text message sent by Defendants to the Plaintiff's phone without consent caused Plaintiff to suffer the injury of occupation of his phone line by unwanted calls, making the phone unavailable for legitimate callers, messages, or outgoing calls and messages, while the phone was alerting Plaintiff to yet another message from Defendants.

64.     Each text message sent by Defendants without the consent of the Plaintiff occupied space in Plaintiff's phone.

65.     Every text message sent by Defendants without express consent to Plaintiff's phone resulted in injury of trespass to Plaintiff's chattel, namely his telephone.

66.     As a result of the text messages described above, Plaintiff was affected in a personal and individualized way through stress, anxiety, nervousness, distress and aggravation.

67.     Defendants' conduct has caused Plaintiff to suffer damages including, but not limited to, the loss of time incurred by Plaintiff as well as attorneys' fees paid for advice regarding his situation.

68.     A corporation or other entity that contracts out its telephone marketing may be held vicariously liable under federal common law principles of agency for violations of section 227(b) or section 227(c) that are committed by third-party telemarketers.

69.     PGW and its related John Doe Entities are thus directly liable for PRO and other vendor John Doe Corporation's telemarketing messages because, upon information and belief, they actively participated in the messages by allowing such an outside entity access to information and systems that normally would be within the seller's exclusive control by giving PRO and John Doe Corporations access to its calling and messaging systems.

70.     PGW and its related John Doe Entities maintain interim control over PRO and John Doe Corporations, as they hired these company to perform tasks and dictated parameters for potential prospects.

71.     PGW and its related John Doe Entities, knew, or should have known, that PRO and John Doe Corporations were violating the TCPA on its behalf and failed to take effective steps within its power to force these companies to cease such conduct. PGW and its related John Doe Entities tacitly consented to such actions by not reasonably investigating or preventing such conduct.

## CLASS ALLEGATIONS

72.     This action is brought as a class action. Plaintiff brings this action on behalf of himself and on behalf of all other persons similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.

73.     The identities of all class members are readily ascertainable from the records of Defendants.

74.     Excluded from the Plaintiff's Class are Defendants, and all officers, members,

partners, managers, directors, and employees of Defendants, and all of their respective immediate families, and legal counsel for all parties to this action and all members of their immediate families.

75. There are questions of law and fact common to the Plaintiff's Class, which common issues predominate over any issues involving only individual class members. The principal issues are whether Defendants' communications with the Plaintiff, such as the above stated claims, violate provisions of the TCPA and Missouri Consumer Fraud and Deceptive Business Practices Act Chapter 407.

76. Plaintiff's claims are typical of the class members, as all are based upon the same facts and legal theories.

77. Plaintiff will fairly and adequately protect the interests of the Plaintiff's Class defined in this complaint. Plaintiff has retained counsel with experience in handling consumer lawsuits, complex legal issues, and class actions, and neither the Plaintiff nor his attorneys have any interests, which might cause them not to vigorously pursue this action.

78. This action has been brought, and may properly be maintained, as a class action pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure because there is a well-defined community interest in the litigation:

    a. **Numerosity**: Plaintiff is informed and believes, and on that basis alleges, that the Plaintiff's Class defined above is so numerous that joinder of all members would be impractical.

    b. **Common Questions Predominate**: Common questions of law and fact exist as to all members of the Plaintiff's Class and those questions predominate over any questions or issues involving only individual class members. The principal issues are whether Defendants' communications with the Plaintiff, such as in the above stated claims, violate provisions of the TCPA and Missouri Consumer Fraud and Deceptive Business

11

Practices Act.

     c.    **Typicality**: Plaintiff's claims are typical of the claims of the class members. Plaintiff and all members of Plaintiff's Class defined in this complaint have claims arising out of the Defendants' common uniform course of conduct complained of herein.

     d.    **Adequacy**: Plaintiff will fairly and adequately protect the interests of the class members insofar as Plaintiff has no interests that are adverse to the absent class members. Plaintiff is committed to vigorously litigating this matter. Plaintiff has also retained counsel experienced in handling consumer lawsuits, complex legal issues, and class actions. Neither the Plaintiff nor his counsel have any interests, which might cause them not to vigorously pursue the instant class action lawsuit.

     e.    **Superiority**: A class action is superior to the other available means for the fair and efficient adjudication of this controversy because individual joinder of all members would be impracticable. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum efficiently and without unnecessary duplication of effort and expense that individual actions would engender. Certification of a class under Rule 23(b)(l)(A) of the Federal Rules of Civil Procedure is appropriate because adjudications with respect to individual members create a risk of inconsistent or varying adjudication which could establish incompatible standards of conduct for Defendants who, upon information and belief, instigate the autodialed calling of non-consenting individuals throughout the United States of America and throughout Missouri.

79.    Certification of a class under Rule 23(b)(2) of the Federal Rules of Civil Procedure is also appropriate in that a determination that the above stated claims, violate provisions of the TCPA, and is tantamount to declaratory relief and any monetary relief under the TPCA would be merely

incidental to that determination.

80. Certification of a class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that the questions of law and fact common to members of the Plaintiff's Class predominate over any questions affecting an individual member, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

81. Further, Defendants have acted, or failed to act, on grounds generally applicable to the Rule (b)(l)(A) and (b)(2) Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

82. Depending on the outcome of further investigation and discovery, Plaintiff may, at the time of class certification motion, seek to certify one or more classes only as to particular issues pursuant to Fed. R. Civ. P. 23(c)(4).

83. This cause of action is brought on behalf of Plaintiff and the members of a class.

84. The class consists of all persons whom Defendants' records reflect were sent a telemarketing calls by Defendants, and (a) whose phone numbers are registered with a cellular device or residential phone line; (b) who had not given written consent to be subjected to these calls; or (c) had explicitly revoked or made clear the lack of consent to make such calls; or (d) were on the FTC's do-not-call registry; and (e) the Plaintiff asserts that the phone calls described contained violations of the TCPA for making telemarking calls in which they had no authority or right to make to Plaintiff and all those in the Class.

## COUNT I
## VIOLATIONS OF THE TELEPHONE CONSUMER
## PROTECTION ACT, 47 U.S.C. § 227 *ET SEQ.*
### Autodial Violations

85. Plaintiff, individually and on behalf of all others similarly situated, incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

86.     The foregoing acts and omissions of the Defendants constitutes violations of the TPCA, including but not limited to each of the above cited provisions of 47 U.S.C. § 227 *et seq.*

87.     Defendants violated the TCPA by (a) initiating a telephone call using an automated dialing system to Plaintiff's cellular telephone number assigned to him, or (b) by the fact that others caused the initiation of those calls on its behalf. *See* C.F.R. 64.1200(a)(1)(iii); 47 U.S.C. § 227(b)(1).

88.     The TCPA provides a private right of action, wherein a person may, if otherwise permitted by the laws or rules of court of a state, bring in an appropriate court of that state:

>    a.      An action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation.

>    b.      An action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater; or

>    c.      Both such actions.

89.     The Court, in its discretion, may treble the statutory damages if the violation was knowing. 47 U.S.C. § 227.

90.     The TCPA is a strict liability statute and Defendants are liable to Plaintiff, individually, and on behalf of all others similarly situated, even if its actions were only negligent.

91.     Defendants knew or should have known that: (a) Plaintiff had unequivocally revoked any given express permission or invitation for Defendants or anyone else to initiate a telephone call using an automated dialing system to Plaintiff's telephone number to solicit information about Defendants, and that (b) Plaintiff had unequivocally revoked any give express permission or invitation for Defendants or anyone else to initiate telemarketing calls to Plaintiff.

92.     If the Court finds that Defendants knowingly violated this subsection or the regulations prescribed under this subsection, the Court may, in its discretion, increase the amount of

the award to an amount equal to not more than three times the amount available under subparagraph (b) of this paragraph. 47 U.S.C. § 227(b)(3).

93.    Plaintiff, and all others similarly situated, is also entitled to and do seek injunctive relief prohibiting the Defendants' violation of the TCPA in the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that the Court grant Plaintiff, and all others similarly situated, the following relief against the Defendants:

a.    Injunctive relief prohibiting such violations of the TCPA by the Defendants in the future;

b.    As a result of the Defendants' willful and/or knowing violations of 47 U.S.C. § 227, Plaintiff, and all others similarly situated, seek treble damages, as provided by statute, of up to $1,500 for each and every call that violated the TCPA;

c.    As a result of Defendants' violations of 47 U.S.C. § 227, Plaintiff, and all others similarly situated, seek $500 in statutory damages for each and every call that violated the TCPA;

d.    A declaration that Defendants' conduct violated the TCPA and that this action is just and proper;

e.    An award of costs and such further relief as the Court may deem just and proper;

f.    That this Court award pre-judgment and post-judgment interest at the statutory rate of 9%;

g.    That this Court award Plaintiff's its attorney fees and all expenses incurred in preparing and prosecuting this claim; and

15

h.     Such other relief as this Court may deem just and proper.

## COUNT II
## VIOLATIONS OF THE TELEPHONE CONSUMER
## PROTECTION ACT, 47 U.S.C. § 227 *ET SEQ.*
## Do Not Call Violations

94.     Plaintiff, individually and on behalf of all others similarly situated, incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

95.     The foregoing acts and omissions of the Defendants constitute violations of the TPCA, including but not limited to each of the above cited provisions of 47 U.S.C. § 227 *et seq.*

96.     Defendants violated the TCPA by failing to maintain reasonable procedures to place Plaintiff, and all others similarly situated, on their internal do not call list, as well to abide by its internal do not call list once individuals are placed on such a list.

97.     Defendant violated the TCPA by failing to abide by the national do not call list, maintained and overseen by the federal government.

98.     The TCPA provides a private right of action, wherein a person may, if otherwise permitted by the laws or rules of court of a state, bring in an appropriate court of that state:

a.     An action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation.

b.     An action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater; or

c.     Both such actions.

99.     The Court, in its discretion, may treble the statutory damages if the violation was knowing. 47 U.S.C. § 227.

100.    The TCPA is a strict liability statute and Defendants are liable to Plaintiff, individually, and on behalf of all others similarly situated, even if its actions were only negligent.

16

101.    Defendants called a residential telephone subscriber who had registered his telephone number on the national do-not-call registry of persons who do not wish to received telephone solicitations that is maintained by the Federal Government.

102.    Defendants called a residential telephone subscriber who had asked numerous times to be on its company-specific do-not-call lists, and thus failed to maintain its internal do-not-call list so as to cease calling individuals who request Defendants do so.

103.    If the Court finds that Defendants knowingly violated this subsection or the regulations prescribed under this subsection, the Court may, in its discretion, increase the amount of the award to an amount equal to not more than three times the amount available under subparagraph (b) of this paragraph. 47 U.S.C. § 227(b)(3).

104.    Plaintiff, and all others similarly situated, is also entitled to and do seek injunctive relief prohibiting the Defendants' violation of the TCPA in the future.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that the Court grant Plaintiff, and all others similarly situated, the following relief against the Defendants:

a.    Injunctive relief prohibiting such violations of the TCPA by the Defendants in the future;

b.    As a result of the Defendants' willful and/or knowing violations of 47 U.S.C. § 227, Plaintiff, and all others similarly situated, seek treble damages, as provided by statute, of up to $1,500 for each and every call that violated the TCPA;

c.    As a result of Defendants' violations of 47 U.S.C. § 227, Plaintiff, and all others similarly situated, seek $500 in statutory damages for each and every call that violated the TCPA;

d.      A declaration that Defendants' conduct violated the TCPA and that this action is just and proper;

e.      An award of costs and such further relief as the Court may deem just and proper;

f.      That this Court award pre-judgment and post-judgment interest at the statutory rate of 9%;

g.      That this Court award Plaintiff's its attorney fees and all expenses incurred in preparing and prosecuting this claim; and

h.      Such other relief as this Court may deem just and proper.

## COUNT III
## VIOLATIONS OF MISSOURI CONSUMER FRAUD
## AND DECEPTIVE BUSINESS PRACTICES ACT Chapter 407

117.      Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

118.      In accordance with Chapter 407, Plaintiff brings Count II for Defendants' practice of making unsolicited and unlawful telephone calls to Plaintiff's telephone number after permission has been revoked.

119.      Section 407.1076(4) states that it is an unlawful telemarketing act or practice for any seller or telemarketer to engage in . . . knowingly and willfully initiating a telemarketing call to a consumer, or transfer or make available for to others for telemarketing purposes a consumer's telephone number when that consumer has stated previously that he or she does not wish to receive solicitation calls by or on behalf of the seller unless such request has been rescinded.

120.      Section 407.1082 clearly states that Section 407.1076(4) confers a private right of action and violators shall be subject to all penalties, remedies and procedures provided by sections 407.010 to 407.030.

18

121.    Section 407.1082 further advises that all remedies under this section are cumulative and in addition to any other remedies available by law.

122.    Defendants violated the Act by engaging in an unscrupulous business practice and by violating Missouri public policy, which public policy violations in the aggregate caused substantial injury to Plaintiff.

123.    Defendants knowingly and willfully continued to call Plaintiff after he advised he no longer wished to be called by or in reference to Defendant PGW.

124.    Plaintiff never rescinded his request that the calls cease.

125.    Plaintiff routinely uses his telephone. Defendants' actions prevented Plaintiff from using his telephone during the time Defendants contacted Plaintiff's telephone for Defendants' unlawful purposes. Plaintiff lost valuable time receiving Defendants' unlawful telephone calls.

126.    Each call made to Plaintiff caused actual damages as Plaintiff must pay for the use of his cell phone, including for the minutes of usage. By knowingly calling a consumer who wished to not receive calls, Defendants knowingly damaged Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that the Court grant Plaintiff, and all others similarly situated, the following joint and severable relief against the Defendants:

a.    That this Court award judgment against Defendants in a total amount in excess of the $25,000 jurisdictional amount of this Court to be proven at trial;

b.    That this Court award damages to Plaintiff, and all others similarly situated;

c.    That this Court award punitive damages to Plaintiff, and all others similarly situated;

19

d.      That this Court declare that Defendants' conduct violated the MMPA and that this action is just and proper;

e.      That this Court award Plaintiff, and all others similarly situated, damages and attorney fees for violation of The Missouri Consumer Fraud and Deceptive Business Practices Act Chapter 407;

f.      That this Court award Plaintiff's attorneys' fees and costs;

g.      That this Court award Plaintiff all expenses incurred in preparing and prosecuting these claims;

h.      That this Court enter an injunction prohibiting Defendants from such violations of the MMPA by the Defendants in the future; and

i.      Awarding such further relief as this Court may deem just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that the Court grant Plaintiff, and all others similarly situated, the following relief against the Defendants:

j.      That this Court award judgment against Defendants in a total amount in excess of the $25,000 jurisdictional amount of this Court to be proven at trial;

k.      That this Court award damages to Plaintiff, and all others similarly situated;

l.      That this Court award punitive damages to Plaintiff, and all others similarly situated;

m.      That this Court declare that Defendants' conduct violated the MMPA and that this action is just and proper;

n.      That this Court award Plaintiff, and all others similarly situated, damages and attorney fees for violation of the MMPA;

o. That this Court award Plaintiff's attorneys' fees and costs;

p. That this Court award Plaintiff all expenses incurred in preparing and prosecuting these claims;

q. That this Court enter an injunction prohibiting Defendants from such violations of the MMPA by the Defendants in the future; and

r. Awarding such further relief as this Court may deem just and proper.

## JURY DEMAND

122. Plaintiff hereby demands a jury trial on all counts so triable.


Dated: January 26, 2022



Respectfully Submitted,


**HALVORSEN KLOTE**

By: /s/ Samantha J. Orlowski

Samantha J. Orlowski, #72058
Joel S. Halvorsen, #67032
680 Craig Road, Suite 104
St. Louis, MO 63141
P: (314) 451-1314
F: (314) 787-4323
sam@hklawstl.com
joel@hklawstl.com
*Attorneys for Plaintiffs*

21